[No. B202773. Second Dist., Div. Five. June 26, 2008.]

DAVE ABSHER, Plaintiff and Appellant, v.
AUTOZONE, INC., et al., Defendants and Respondents.

## COUNSEL

Blum/Collins and Steven A. Blum for Plaintiff and Appellant.

Latham & Watkins, Alan B. Clark, Belinda S. Lee and Courtney E. Vaudreuil for Defendants and Respondents.

## OPINION

MOSK, J.—

### INTRODUCTION

The issue on appeal is whether the consumer protection statute that prohibits merchants from obtaining personal identification information from credit card users (Civ. Code, § 1747.08, subd. (a))[1] should be interpreted to apply to a refund for the return of merchandise purchased by credit card. We hold that section 1747.08, subdivision (a) does not apply to such return transactions.

### FACTS[2]

In early March 2006, thieves siphoned gas from plaintiff Dave Absher's (plaintiff) car. On March 8, 2006, plaintiff drove to an AutoZone store to

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

[2] Pursuant to the applicable standard of review discussed below, we state the facts in the light most favorable to plaintiff as the party against whom summary judgment was entered. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

purchase a locking gas cap. He purchased a gas cap with his credit card, took it to his car, but discovered that it did not fit.[3]

Within minutes of the purchase transaction,[4] plaintiff returned to the store. He presented his purchase receipt, the gas cap, and his credit card to the store clerk and requested a credit card refund.[5] The clerk "swiped" plaintiff's credit card—i.e., passed the card's magnetic strip through an electronic card reader—handed him a form with lines for his name, telephone number, and signature (return voucher), and instructed plaintiff to fill out the return voucher. Plaintiff, who had been the victim of identity theft, asked why the clerk needed his telephone number. The clerk responded that he did not know the reason for the telephone number requirement, but confirmed that the number was required to process the return. Plaintiff wrote his name and telephone number on the return voucher and signed it.

## PROCEDURAL BACKGROUND

Approximately two weeks after plaintiff returned the gas cap to the AutoZone store, he filed a class action complaint naming four AutoZone entities, including AutoZone West, Inc., and AutoZone Parts, Inc.[6] (collectively AutoZone), as defendants. Plaintiff asserted a single cause of action under section 1747.08. He alleged that AutoZone's practice of requiring credit card customers to write their telephone number on return vouchers violated section 1747.08, subdivision (a)(3). Plaintiff sought, inter alia, statutory penalties under section 1747.08, subdivision (e) for each return transaction that violated subdivision (a)(3) during the class period. Plaintiff also sought recovery of attorney fees.

AutoZone filed a motion for summary judgment on the ground that a refund for the return of merchandise purchased by credit card was not subject to the prohibitions of section 1747.08, subdivision (a). The trial court granted the motion. According to the trial court, "[w]hen the statute is read as a whole" it should be "interpreted to apply only to credit card purchases . . . ."

---

[3] The record does not reflect whether, prior to purchasing the gas cap, plaintiff made any attempt to verify with AutoZone employees that it would fit his car.

[4] The documentation of the transaction shows that the purchase was made at 11:58 a.m. and that the return was processed at 12:03 p.m.

[5] The record does not reflect whether plaintiff made any effort to exchange the gas cap for another that would fit his car.

[6] Prior to the hearing on the summary judgment motion, the parties stipulated that, because AutoZone, Inc., and AutoZone Stores, Inc., did not own or operate retail AutoZone stores in California, they should be dismissed. Thus, the action proceeded, and the judgment was entered, against AutoZone West, Inc., and AutoZone Parts, Inc., only.

The trial court entered a judgment dismissing the action, and plaintiff filed a timely appeal from the judgment.

### A. *Standard of Review*

"We review the grant of summary judgment de novo. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356].) We make 'an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law.' (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].)" (*Moser v. Ratinoff* (2003) 105 Cal.App.4th 1211, 1216–1217 [130 Cal.Rptr.2d 198].) Similarly, we apply a de novo standard of review to the trial court's resolution of the underlying statutory interpretation issues. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531 [85 Cal.Rptr.2d 257, 976 P.2d 808]; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081–1082 [36 Cal.Rptr.3d 650].)

### B. *Section 1747.08*

Section 1747.08, subdivision (a) provides: "(a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business[7] shall do any of the following: [¶] (1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information[8] upon the credit card transaction form or otherwise. [¶] (2) Request, or require as a condition to accepting

---

[7] For purposes of brevity, we will refer to the various persons and entities specified in the first sentence of section 1747.08, subdivision (a) as "merchants."

[8] "Personal identification information" is defined in section 1747.08, subdivision (b) as "information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number."

the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise. [¶] (3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder."

■ Section 1747.08, subdivision (c) enumerates four exceptions to the prohibitions set forth in section 1747.08, subdivision (a): (i) if the credit card is used as a deposit to secure payment in the event of default, loss, or damage; (ii) cash advance transactions; (iii) if the merchant who accepts the credit card is contractually or legally obligated to provide the personal information to complete the transaction; or, (iv) if the information is required for a special purpose incidental to the transaction, such as shipping, delivery, servicing, or installation. (§ 1747.08, subd. (c).)

Section 1747.08, subdivision (d) allows the merchant to require the credit card customer to provide photo identification "as a condition to accepting the credit card as payment in full or in part for goods or services," provided no information from the photo identification is recorded by the merchant on the credit card form. (§ 1747.08, subd. (d).) It also allows the merchant to record the credit card customer's driver's license number or similar information, if the customer pays for the transaction with an account number but does not make the credit card available. (*Ibid.*)

Violations of section 1747.08, subdivision (a) are punished by the imposition of civil penalties. "Any person who violates this section shall be subject to a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation, to be assessed and collected in a civil action brought by the person paying with a credit card, by the Attorney General, or by the district attorney or city attorney of the county or city in which the violation occurred. However, no civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid that error. When collected, the civil penalty shall be payable, as appropriate, to the person paying with a credit card who brought the action, or to the general fund of whichever governmental entity brought the action to assess the civil penalty." (§ 1747.08, subd. (e).)

This statute was patterned after a New York consumer protection statute. (Cal. Atty. Gen., letter to Assemblyman Rusty Areras concerning Assem. Bill No. 2920 (1989–1990 Reg. Sess.) Mar. 13, 1990; see NY Gen. Bus., § 520-a.) It is reported that there are comparable statutes in a number of other states.[9] (Rosensweig, *Class Actions Focus On Retailers, Again* (Apr. 2007) Shopping Center Business, p. 104; see, e.g., Mass. Gen. Laws, ch. 93, § 105; Kan. Stats. Ann., § 50-669a; R.I. Gen. Laws, § 6-13-16; Nev. Rev. Stat., § 597.940; Md. Code Ann., Com. Law, § 13-317; Del. Code Ann., tit. 11, § 914.)

### C. Interpretation[10] of Section 1747.08, Subdivision (a)

Plaintiff contends that the language of section 1747.08, subdivision (a) is broad enough to include a refund for the return of merchandise purchased by credit card, as well as the purchase transaction itself. In doing so, he raises an issue of statutory interpretation that has been addressed and resolved against his position in three recent cases. (*The TJX Cos., Inc. v. Superior Court* (2008) 163 Cal.App.4th 80 [77 Cal.Rptr.3d 114]; *Korn v. Polo Ralph Lauren Corp.* (E.D.Cal., May 28, 2008, No. S-07-02745 FCD JFM) ___ F.Supp.2d ___ [2008 WL 2225743]; *Romeo v. Home Depot, U.S.A. Inc.* (S.D.Cal., Oct. 16, 2007, No. 06CV1505 IEG (WMc)) ___ F.Supp.2d ___ [2007 WL 3047105].) For the reasons set forth below, we reject plaintiff's interpretation of section 1747.08.

■ " 'In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]' (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056 [6 Cal.Rptr.3d 432, 79 P.3d 548].) In other words, if there is 'no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said,' and it is not necessary to 'resort to legislative history to determine the statute's true meaning.' (*People v. Cochran* (2002) 28 Cal.4th 396, 400–401 [121 Cal.Rptr.2d 595, 48 P.3d 1148].)" (*People v. Licas* (2007) 41 Cal.4th 362, 367 [60 Cal.Rptr.3d 31, 159 P.3d 507].) "We begin by examining the statute's

---

[9] The parties have not called to our attention any authorities from those states bearing on the issue here.

[10] Although there may be a theoretical distinction between "interpretation" and "construction" (2A Singer & Singer, Sutherland Statutes and Statutory Construction (7th ed. 2007) § 45.4, p. 27; Garner, Dict. of Modern Legal Usage (2d ed. 2001) p. 462), we make no such distinction.

words, giving them a plain and commonsense meaning." (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].)

■ "But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. (*People* v. *Belton* (1979) 23 Cal.3d 516, 526 [153 Cal.Rptr. 195, 591 P.2d 485]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].) An interpretation that renders related provisions nugatory must be avoided (*People* v. *Craft* (1986) 41 Cal.3d 554, 561 [224 Cal.Rptr. 626, 715 P.2d 585]); each sentence must be read not in isolation but in the light of the statutory scheme (*In re Catalano* (1981) 29 Cal.3d 1, 10–11 [171 Cal.Rptr. 667, 623 P.2d 228]); and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed (*Metropolitan Water Dist.* v. *Adams* (1948) 32 Cal.2d 620, 630–631 [197 P.2d 543])." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ "When the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction 'which serve as aids in the sense that they express familiar insights about conventional language usage.' (2A Singer, Statutes and Statutory Construction (6th ed. 2000) p. 107.) Courts also look to the legislative history of the enactment. 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' (*Ibid.*)" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166].)

Plaintiff bases his interpretation of section 1747.08, subdivision (a) on the phrase "any credit card transaction" in subdivision (a)(3). According to plaintiff, that phrase clearly includes any transaction involving a credit card, including a return in exchange for a reversal of the original credit card

purchase transaction. When we apply the foregoing rules of interpretation to the language of section 1747.08, subdivision (a), however, we conclude that section does not apply to return transactions like the one involved here.

Even if, as plaintiff urges, the phrase "credit card transaction" is read in isolation, it does not clearly and unambiguously (see *People v. Lopez, supra*, 31 Cal.4th at p. 1056), include exchange, refund, and return transactions. Purchases by cash, check, or credit card are generally referred to as "cash transactions," "check transactions," or "credit card transactions," respectively.[11] But when merchandise purchased by cash, check, or credit card is returned to the merchant, it is not as clear that those return transactions are known as cash transactions, check transactions, or credit card transactions. The type of payment for the merchandise, whether by cash, check, or credit card, does not always dictate how the return is processed.

For example, a return of merchandise purchased by credit card can be processed in different ways, including a return of the item in exchange for another item, a return in exchange for a store credit, a return in exchange for a reversal of the credit card debit, and, in some instances, a return in exchange for cash.[12] Thus, depending on the type of return, the transaction may have nothing to do with the customer's credit card. And, even if the return is in exchange for a reversal of the credit card charge, there is at least some question whether the term "credit card transaction" refers to such a return. It therefore appears that the term "credit card transaction" in section 1747.08, subdivision (a)(3) is ambiguous when applied to return transactions like the one in issue.

In addition, in this case plaintiff was asked to write his phone number on a return voucher, presumably as part of AutoZone's standard return process. The return voucher was a document separate from the return receipt showing the reversal of the credit card charge. There is nothing in the record to indicate that AutoZone's use of a return voucher was limited to the type of refund here, i.e., a reversal of a credit card charge. Therefore, based on AutoZone's stated rationale for using the voucher form—to detect and prevent employee fraud—that same voucher could be used for a return of an item purchased by cash or check. Accordingly, the return voucher does not

---

[11] These terms are used in laws, regulations, and cases. (See, e.g., 12 C.F.R. § 226.2(a)(9) (Supp. I (2008)); *Thompson v. 10,000 RV Sales, Inc.* (2005) 130 Cal.App.4th 950, 960, 967, 970–971 [31 Cal.Rptr.3d 18]; *Palmanteer v. Foremost Life Ins. Co.* (1978) 82 Cal.App.3d 341, 344 [147 Cal.Rptr. 86]; Ins. Code, § 779.2.)

[12] See, e.g., Business and Professions Code section 17538, subdivision (a)(2); section 1723, subdivision (a); California Department of Consumer Affairs, Legal Affairs Division: Legal Guide S-6, Display of Return Policy by Retail Sellers (Apr. 1991) (common expectation is that the "retail seller gives a full cash or credit refund, and equal exchange, or some combination of these . . .").

appear to be "a credit card form" "[u]tilize[d] in [a] credit card transaction" as referred to in section 1747.08, subdivision (a)(3). This is another reason why the statute does not, as plaintiff argues, unambiguously apply to this transaction.

 If the statute is not "clear and unambiguous" (*People v. Lopez, supra,* 31 Cal.4th at p. 1056), we must analyze it in accordance with the criteria set forth above, including the requirement that the words of the statute must be construed in context and provisions relating to the same subject matter—such as section 1747.08, subdivision (a)(1), (2) and (3)—should be harmonized to the extent possible. (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at pp. 1386–1387.) Moreover, even if the phrase "any credit card transaction" in subdivision (a)(3) can be viewed as having a plain meaning or, in isolation, broad enough to include a refund for the return of merchandise purchased by credit card, we still may determine "whether the literal meaning of [the] statute comports with its purpose or whether such a construction of [this] one provision is consistent with other provisions of the statute." (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.) As explained below, when subdivision (a)(3) is read together with subdivision (a)(1) and (2) and other provisions, the term "any credit card transaction" cannot be read to refer to return transactions.

In their original form, section 1747.08, subdivision (a)(1) and (2) only prohibited merchants from *requiring* credit card customers to write or provide personal identification information as a condition to accepting payment by credit card, but they did not prohibit a merchant from *requesting* such information. (See Assem. Com. on Banking, Finance and Public Indebtedness, Rep. on Assem. Bill No. 1477 (1991–1992 Reg. Sess.) May 13, 1991; see *Florez v. Linens 'N Things, Inc.* (2003) 108 Cal.App.4th 447 [133 Cal.Rptr.2d 465] (*Florez*).) In 1991, the Legislature amended the predecessor of section 1747.08[13] to add the word "request" to subdivision (a)(1) and (2). The Legislature's stated purpose in amending those two subdivisions was to clarify that merchants "may neither require nor request, as a condition to accepting the credit card, the taking or recording of personal identification information from the cardholder. (Current law states that such information may not be required, but does not prohibit requesting such information.)" (See Assem. Com. on Banking, Finance and Public Indebtedness, Rep. on Assem. Bill No. 1477 (1991–1992 Reg. Sess.) May 13, 1991.) The word "request" was added to subdivision (a)(1) and (2) to "prevent a 'request' for personal information, because a customer might perceive that request as a condition of credit card payment. In effect, the 1991 amendment prevents a

---

[13] Former section 1747.8.

retailer from making an end-run around the law by claiming the customer furnished personal identification data 'voluntarily.' " (*Florez, supra,* 108 Cal.App.4th at p. 453.)

■ Section 1747.08, subdivision (a)(1) now prohibits merchants from requesting or requiring credit card customers to write personal identification information on a credit card form as a condition precedent to accepting payment by credit card. Similarly, subdivision (a)(2) prohibits merchants from requesting or requiring credit card customers to provide personal identification information—as a condition precedent to accepting payment by credit card—so that the merchant can write the information on the credit card form.

Section 1747.08, subdivision (a)(3), including the phrase "any credit card transaction," follows subdivision (a)(1) and (2) and prohibits a third practice—utilizing a credit card form with preprinted spaces for filling in personal identification information. Thus, the phrase "any credit card transaction" in subdivision (a)(3) can reasonably be interpreted to refer to the same types of transactions described in subdivision (a)(1) and (2), i.e., purchase transactions. Under this interpretation, subdivision (a), read as a whole, identifies and prohibits three different, but related business practices that occur in credit card purchase transactions.

■ If, as we discuss, section 1747.08, subdivision (a)(1) and (2) are limited to purchase transactions, reading subdivision (a)(3) to apply to a return, as plaintiff contends, would result in an anomaly. Under that interpretation, a merchant processing a return transaction would be prohibited from using a preprinted form with spaces for providing personal information, but not from *requiring* that such information be provided in some other manner. A statute open to more than one interpretation should be interpreted so as to " 'avoid anomalous or absurd results.' " (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 801 [63 Cal.Rptr.3d 575]; see *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549]; *People v. Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257].) Therefore, if subdivision (a)(1) and (2) are limited to purchase transactions, subdivision (a)(3) logically can be interpreted as applying only to purchase transactions, not returns.

To deal with this point, plaintiff argues that section 1747.08, subdivision (a)(1) and (2) relate to transactions other than purchase transactions. Relying on what he refers to as the "last antecedent" rule,[14] plaintiff

---

[14] *Demchuk v. State Dept. of Health Services* (1991) 4 Cal.App.4th Supp. 1, 4–5 [6 Cal.Rptr.2d 635]; see *People v. Baker* (1968) 69 Cal.2d 44, 46 [69 Cal.Rptr. 595, 442 P.2d 675]

focuses on the placement of a comma after the word "request" and before the words "or require" at the beginning of both subdivision (a)(1) and (2). From plaintiff's perspective, the placement of the commas indicates that the qualifying phrase "as a condition to accepting the credit card as payment" applies only to "require," not to "request." Therefore, under this punctuation-based interpretation, subdivision (a)(1) and (2) prohibit a merchant from requesting that a customer provide personal information on a card form in connection with *any* credit card transaction, including a return transaction, because a request for such information is not subject to the phrase "as a condition to accepting payment in full or in part for goods or services." According to plaintiff, if the word "request" in subdivision (a)(1) and (2) is not limited to purchase transactions but also applies to returns, there is no reason to read subdivision (a)(3) as limited to purchase transactions.

Admittedly, the punctuation in section 1747.08, subdivision (a)(1) and (2) is not punctilious, but adhering to plaintiff's interpretation would mean that under subdivision (a)(1), a merchant processing a return could not request a customer to write personal information on a credit card form, but could *require* the customer to do so because the prohibition against requiring customers to write personal information would be limited to purchase transactions. Similarly, under subdivision (a)(2), a merchant processing a return could not request a customer to provide personal information to be written by the merchant on a credit card form, but could *require* that information to be provided. Because, as noted above, such anomalous results must be avoided (*Wang v. Wal-Mart Real Estate Business Trust, supra,* 153 Cal.App.4th at p. 801), we reject plaintiff's conclusion that subdivision (a)(1) and (2) apply, in part, to return transactions. As explained above, the Legislature added the word "request" to both subdivisions to supplement the "require" language, not to expand what might constitute a credit card transaction.

In addition, there is no explicit reference in section 1747.08, subdivision (a)(3) to exchanges, refunds, or returns as there is in section 1747.09, subdivision (a)(3),[15] which refers to an "exchange, refund, or

(a "rule of [statutory] construction that 'relative or modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases' ").

[15] Section 1747.09, subdivision (a)(3) provides: "(a) Except as provided in this section, no person, firm, partnership, association, corporation, or limited liability company that accepts credit or debit cards for the transaction of business shall print more than the last five digits of the credit or debit card account number or the expiration date upon any of the following: [¶] . . . [¶] (3) Any receipt retained by the person, firm, partnership, association, corporation, or limited liability company, which is printed at the time of the purchase, exchange, refund, or return, but is not signed by the cardholder, because the cardholder used a personal identification number to complete the transaction." Section 1747.09, subdivision (d) provides that subdivision (a)(2) and (3) will not become effective until January 1, 2009.

return." That the Legislature in a later-enacted provision in the same act[16] did not utilize the term "credit card transaction" to refer to exchanges, refunds, or returns raises doubt that the Legislature intended to include within the ambit of section 1747.08, subdivision (a) transactions such as the one that occurred here.

That section 1747.08, subdivisions (d) and (e) also explicitly refer to purchase transactions suggests that the Legislature's focus in enacting section 1747.08 was on purchase transactions. In explaining that merchants can require a credit card customer to provide photo identification, subdivision (d) specifies that the merchant may do so "as a condition to accepting the credit card as payment in full or in part for goods and services . . . ." Similarly, subdivision (e) provides that penalties for violations may be "assessed and collected in a civil action brought by the person paying with a credit card" and that "the person paying with a credit card" who brings such an action is entitled to receive the penalty.

Both parties have referred to the legislative history of the statute. But aside from that to which we have referred, we have found nothing in that history that is particularly helpful. Plaintiff points to references to "charge-backs" in one legislative report on the proposed statute. (See Assem. Com. on Finance and Ins., Background Summary for Assem. Bill No. 2920 (1989–1990 Reg. Sess.) Hearings before Sen. Com. on Judiciary, July 3, 1990.) The report addresses and discounts merchants' purported need for personal information *at the time of the purchase* "to help them deal with 'charge-backs' " that may occur later. (*Ibid.*) The report then refers to a "product problem" causing a return and notes that at the time of purchase, the merchant does not need the consumer's phone number because, in most product problem cases, the consumer "initiates the resolution of the problem." (*Ibid.*) But the discussion of "charge-backs" in the legislative history does not deal with information sought *at the time of a return* or with AutoZone's stated rationale for requiring the information at that time, i.e., detecting and preventing employee fraud.

The legislative history does make clear that the Legislature sought to address the misuse of personal identification information for, inter alia, marketing purposes, and found that there would be no legitimate need to obtain such information from credit card customers if it was not necessary to the completion of the credit card transaction. But returns of merchandise arguably are different. Certain personal information may be necessary to verify that the return transaction was bona fide and to prevent employees from manipulating such transactions for their own benefit. Moreover, if the

---

[16] Section 1747 provides: "This title may be cited as the 'Song-Beverly Credit Card Act of 1971.' "

product returned has been used or damaged prior to the return, the merchant may have a legitimate need to contact the customer who made the return. Although the merchant and its employees would have access to the personal information in a return transaction under our interpretation of section 1747.08, subdivision (a), there appears to be some legitimate justification for such access other than marketing purposes.

Plaintiff's reliance on *Florez, supra,* 108 Cal.App.4th 447 is misplaced. Although the court in that case observed that consumer protection statutes, such as the predecessor of section 1747.08, should be liberally construed, it did not deal with the statutory interpretation issue here. Instead, *Florez* involved the issue of whether the predecessor of section 1747.08 allowed a merchant to request personal identification information from a customer before the customer announced his or her preferred method of payment. (*Florez, supra,* at p. 451.) According to the court in *Florez,* "a 'request' for personal identification information [is] prohibited if it immediately precede[s] the credit card transaction, even if the consumer's response [is] voluntary and made only for marketing purposes." (*Id.* at p. 453.) Because the narrow issue that *Florez* resolved is not before us, that decision provides little guidance as to the proper resolution of the interpretation issue we face.

Interpreting section 1747.08, subdivision (a) as applying only to purchase transactions, and not to transactions like the one at issue here, is the "more reasonable result." (*Lungren v. Deukmejian, supra,* 45 Cal.3d at p. 735.) It avoids the anomalies that would result from plaintiff's interpretation. Our interpretation also reads the contested provision in the entire context of subdivision (a) and better harmonizes the enumerated prohibitions within that subdivision, while fulfilling the goals of the Legislature in enacting the statute. And, it allows merchants reasonable means to safeguard against potential abuses in connection with the return of merchandise. Finally, as noted above, our interpretation of the statute is supported by the holdings in recent cases. (*The TJX Cos., Inc. v. Superior Court, supra,* 163 Cal.App.4th 80; *Korn v. Polo Ralph Lauren Corp., supra,* ___ F.Supp.2d ___ [2008 WL 2225743]; *Romeo v. Home Depot, U.S.A. Inc., supra,* ___ F.Supp.2d ___ [2007 WL 3047105].)

Thus, we conclude that the prohibitions in section 1747.08, subdivision (a) do not apply to return transactions like the one in this case. AutoZone was therefore entitled to summary judgment.

## DISPOSITION

The judgment of the trial court is affirmed, and AutoZone is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.