Filed 12/15/20 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SPOTLIGHT ON COASTAL CORRUPTION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEVE KINSEY et al.,<br><br>    Defendants and Appellants. | D074673<br><br>(Super. Ct. No. 37-2016-00028494-CU-MC-CTL)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on November 24, 2020 be modified as follows:

On page 28, in the second full paragraph that begins with "The Coastal Commission sponsored this bill . . . ." insert the following after the citation to Senate Natural Resources and Wildlife, Bill Analysis of Sen. Bill 608, April 13, 1993:

> Thereafter, the Coastal Commission continued to be identified in the legislative history as supporting Senate Bill 608.  (See, e.g., Assembly Committee on Natural Resources, Bill Analysis of Sen. Bill 608, June 28, 1993, p. 3; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998)

17 Cal.4th 553, 571., fn. 9 [approving citation to published legislative history].)

There is no change in judgment.

The petition for rehearing filed by Spotlight on Coastal Corruption is denied.


BENKE, Acting P. J.

Copies to:  All parties

Filed 11/24/20 (unmodified opinion)
CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| SPOTLIGHT ON COASTAL CORRUPTION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> STEVE KINSEY et al., <br><br> Defendants and Appellants. | D074673 <br><br><br> (Super. Ct. No. 37-2016-00028494-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy B. Taylor, Judge. Reversed with directions.


Xavier Becerra, Attorney General, Daniel A. Olivas, Assistant Attorney General, David G. Alderson, Supervising Deputy Attorney General, and Joel S. Jacobs, Deputy Attorney General, for Defendants and Appellants.

Briggs Law Corporation, Corey J. Briggs; Higgs Fletcher & Mack, John Morris and Rachel E. Moffitt for Plaintiff and Respondent.

Defendants, who at the time of trial were current or former California Coastal Commissioners (Commissioners), appeal from a nearly $1 million judgment after the court found they violated statutes requiring disclosure of certain ex parte communications. The case turns on whether (1) plaintiff

Spotlight on Coastal Corruption (Spotlight) has standing to pursue these claims under Public Resources Code[1] sections 30324 and 30327; and (2) the up to $30,000 penalty for "any" violation of the Coastal Act in section 30820, subdivision (a)(2) (hereafter, section 30820(a)(2)) applies to such ex parte disclosure violations.

Concluding that Spotlight lacks standing and that section 30820(a)(2) is inapplicable, we reverse with directions to enter judgment for Defendants.

BACKGROUND

A. *Ex Parte Communication Disclosure Duty*

The California Coastal Act of 1976 (§ 30000 et seq., the Act) governs land use planning for California's coastal zone. (*Yost v. Thomas* (1984) 36 Cal.3d 561, 565.) Generally speaking, any person intending to develop land in the coastal zone must obtain a coastal development permit in addition to any other permit required by law. (§ 30600, subd. (a).) The Act is administered by the California Coastal Commission (Commission), a board comprised of 15 members, including 12 representatives of the public, who are appointed by the Governor, the Senate Committee on Rules, and the Speaker of the Assembly. (§§ 30300-30301, 30301.5.)

For lawyers and judges rooted in ethical standards prohibiting ex parte communications, it is somewhat surprising that ex parte communications between a Commissioner and a person interested in a Commission matter is permissible. The Act defines an "ex parte communication" as "any oral or written communication between a member of the [C]ommission and an interested person, about a matter within the [C]ommission's jurisdiction, which does not occur in a public hearing, workshop, or other official

---

[1] Undesignated statutory references are to the Public Resources Code.

2

proceeding, or on the official record of the proceeding on the matter."
(§ 30322, subd. (a).)

To ensure open decisionmaking in a system allowing private communications about pending matters, the Act provides that a Commissioner must "fully disclose[] and make[] public the ex parte communication by providing a full report of the communication to the [Commission's] executive director within seven days after the communication or, if the communication occurs within seven days of the next commission hearing, to the [C]ommission on the record of the proceeding at that hearing." (§ 30324, subd. (a).) Full disclosure includes but is not necessarily limited to all of the following: (1) the date, time, and location of the communication; (2) the identity of the person(s) (i) initiating and receiving the communication, (ii) on whose behalf the communication was made; and (iii) present during the communication; (3) a "complete, comprehensive description of the content of the ex parte communication, including a complete set of all text and graphic material that was part of the communication." (§ 30324, subd. (b)(1)(A)-(C).)

The executive director "shall place in the public record any report of an ex parte communication." (§§ 30335, 30324, subd. (b)(2).) A communication ceases to be an ex parte communication when it is "fully disclosed and placed in the commission's official record." (§ 30324, subd. (c).)

B. *Up to $7,500 Penalty for Nondisclosure*

A violation of section 30324 is punishable under section 30824, which provides: "In addition to any other applicable penalty, any commission member who knowingly violates [s]ection 30324 is subject to a civil fine, not to exceed seven thousand five hundred dollars ($7,500). Notwithstanding any

3

law to the contrary, the court may award attorneys' fees and costs to the prevailing party."

C. *Additional $7,500 Penalty for Participation in the Matter*

A Commissioner is also prohibited from participating in a matter about which he or she has knowingly had an unreported ex parte communication. Section 30327, subdivision (a) provides that a Commissioner shall not "participate in making, or [in] any other way attempt to use his or her official position to influence a [C]ommission decision" about which he or she "has knowingly had an ex parte communication that has not been reported pursuant to [s]ection 30324."

Under section 30327, subdivision (b), a Commissioner who "knowingly violates" this section may be fined up to $7,500, "in addition to any other applicable penalty," including a civil fine imposed pursuant to [s]ection 30824. The court may also award prevailing party attorneys' fees. (§ 30327, subd. (b).)

Fines are deposited in the Violation Remediation account of the Coastal Conservancy Fund until appropriated. (§ 30823.)

D. *Spotlight*

The plaintiff in this case, Spotlight, is a lawyer-created entity. Spotlight has no employees and uses its trial lawyer's San Diego office as its own address. Spotlight has never appeared at a Commission hearing. Its founder, a former assistant San Diego city attorney, testified that Spotlight "exists to make sure . . . that [C]ommissioners follow the Coastal Act with regard to ex parte communications . . . ." The trial court found that testimony credible.

Spotlight acknowledges that "this case does not center on any specific land-use decision by the Commission as a regulatory body . . . ." Spotlight

4

"neither supports, opposes, nor otherwise seeks any particular outcome on a past or pending decision of the Commission as a body or agency."

E.  *The Operative Complaint*

Spotlight filed this action against five Commissioners:  Steve Kinsey, Erik Howell, Martha McClure, Wendy Mitchell, and Mark Vargas (collectively, Defendants).  The operative fourth amended complaint (Complaint) alleges a cause of action for "Violation of Laws Governing Ex Parte Communications," which Spotlight divided into three "counts."  Count 1 alleges violations of section 30324.  Spotlight alleged 70 such violations by Kinsey, 48 by Howell, 42 by McClure, 60 by Mitchell, and 75 by Vargas.

In count 2, Spotlight alleged that on the same number of occasions, each defendant knowingly attempted "to use his or her official position as a member of the Coastal Commission to influence a Commission decision about which each Defendant knowingly had an ex parte communication that was not reported in accordance with . . . section 30324."

In count 3, Spotlight alleged that each violation of section 30324 and 30327, subdivision (a) is "separately punishable" under section 30820, subdivision (a)(2).[2]

---

[2]     Subdivision (a)(1) of section 30820 provides that any person who undertakes development in violation of the Act is subject to civil liability of at least $500 and not more than $30,000.  Subdivision (a)(2) of that statute provides, "Civil liability may be imposed for any violation of [the Act] other than that specified in paragraph (1) in an amount that shall not exceed thirty thousand dollars ($30,000)."  See *post*, section II, for further discussion of section 30820.

Overall, Spotlight sought $45,000 in civil penalties per violation, and against each defendant sought:

| | |
|---|---|
| Kinsey: | $5,250,000 |
| Howell: | $3,600,000 |
| McClure: | $3,150,000 |
| Mitchell: | $4,500,000 |
| Vargas: | $5,625,000 |

Spotlight further alleged, "Any civil fine or civil liability must be paid by Defendants personally, with their private funds . . . ." After six days of testimony, the trial court concluded that Spotlight made these allegations "for *in terrorem* effect and perhaps for headlines."[3]

F. *Trial*

Thirteen witnesses testified, exceeding 1,500 pages of reporter's transcript. However, a detailed understanding of the evidence is unnecessary to resolve the appellate issues. The opening brief devotes only two pages to the facts, and the factual summary in Spotlight's brief is only one paragraph. Our summary is, therefore, similarly truncated.

1. *Former Commissioner Mitchell*

Commissioner Mitchell ended her term in 2016. During her tenure, she relied on Commission staff to correctly process her disclosure forms, and her practice was to timely comply with the statutes. She testified that she never concealed any ex parte communication and attempted to comply with disclosure rules because it "behooved everyone that the information was

---

[3]     Against McClure and Mitchell, Spotlight also alleged in separate causes of action that each unlawfully accepted gifts. The court found against Spotlight on those claims. Spotlight cross-appealed from the judgment; however, on Spotlight's subsequent request, we dismissed its cross-appeal.

6

disclosed . . . ." Mitchell conceded, however, that she was "far from perfect," explaining:

> "I have a full-time job and a small child and did the work of a volunteer in trying to get these [disclosure forms] in. So if things are not signed or—it just means that probably—it was sent off quickly via e-mail instead of printing it and scanning it and all of that."

The court determined that Mitchell committed 22 violations out of the 240 alleged against her at trial, and imposed a $7,100 fine.

### 2. *Former Commissioner McClure*

Commissioner McClure's term also ended by the time of trial. She admitted to submitting tardy disclosure forms and, on one occasion, she failed to sign the disclosure. After determining that McClure committed 14 violations out of the 168 asserted against her at trial, the court imposed a $2,600 fine.

### 3. *Commissioner Vargas*

Commissioner Vargas admitted making several tardy disclosures. The court determined that Vargas committed 25 of the 249 asserted violations. One violation was serious enough to warrant a $5,000 fine. In total, the court imposed a $13,600 fine.

### 4. *Commissioner Howell*

Commissioner Howell acknowledged that one of his disclosure forms was undated, and another was unsigned. Out of the 165 violations that Spotlight asserted against Howell at trial, the court determined he committed 13, and imposed a $3,500 fine.

### 5. *Former Commissioner Kinsey*

Commissioner Kinsey's term ended in 2017. His most serious violation was a failure to report an ex parte communication, after which he

7

participated in the project's decision. The court imposed a $7,500 fine for this violation. Kinsey also submitted several tardy disclosures. Of the 321 violations Spotlight asserted against Kinsey at trial, the court found he had committed 59 and imposed a $30,300 fine.

6. *The Nature of the Violations, in Summary*

At trial, Spotlight asserted that Defendants had committed "hundreds and hundreds of known violations," which Spotlight characterized as "clear-cut crimes" that "shattered the public's confidence" and "ruin[ed] the public's trust" in the Commission's fairness.

The trial court rejected these assertions, stating:

> "Whatever else may be said about the derelictions of the five defendant commissioners, it is hard to argue that their conduct put any person or property in jeopardy. Abetted by lax Commission procedures, they violated the ideal of openness and transparency, but no coastline view corridor was lost; no seabird or fish habitat was sullied, no property owner's development rights were impinged."

G. *Cross-motions for Attorneys' Fees*

On cross-motions for attorneys' fees, the court determined that Spotlight was the prevailing party. Although Defendants defeated approximately 99 percent of Spotlight's monetary claims, the court found that Spotlight's "main litigation objective" was to "shed light on [the] lax ex parte disclosure practices at the Commission and create changes in those practices" and "[t]his objective was met . . . ." The court awarded "a base attorneys' fee" of $529,046.57 plus a multiplier, for a total attorneys' fee award of $929,046.57.

## DISCUSSION

### I. *THE COURT ERRONEOUSLY DETERMINED THAT SPOTLIGHT HAS PUBLIC INTEREST STANDING AS TO COUNTS 1 AND 2 OF THE FIRST CAUSE OF ACTION*

#### A. *Standing, in General*

"Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 809.) "Standing goes to the existence of a cause of action [citation], and the lack of standing may be raised at any time in the proceedings." (*United Farmers Agents Assn., Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 488.)[4] "Typically, to have standing, a plaintiff must . . . have some 'special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.'" (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 738.)

#### B. *Public Interest Standing*

"There is no general 'public interest' exception to the requirement of standing." (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 497 (*People ex rel. Becerra*).) However, in cases seeking a writ of mandate, the California Supreme Court has held that " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [petitioner] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.] This ' "public right/public duty" exception to the requirement of

---

4    In this case, Defendants raised lack of standing multiple times, including in a demurrer.

9

beneficial interest for a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' [Citations.] We refer to this variety of standing as 'public interest standing.' " (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 166 (*Save the Plastic Bag*).)

C. *The Trial Court's Ruling and Defendants' Contentions*

The trial court ruled that Spotlight has public interest standing "as to counts one and two"—that is, to sue Defendants under sections 30324 (nondisclosure of ex parte communications) and 30327, subdivision (a) (participating without disclosing related ex parte communications).

Defendants contend that as a matter of law, public interest standing applies only in mandamus actions, not actions like this one, to recover civil fines. Defendants further assert that even if Spotlight has public interest standing, the trial court should have declined to afford standing because anyone actually aggrieved by the Commissioners' conduct may enforce the disclosure statutes.

D. *Spotlight Lacks Public Interest Standing*

The "public interest standing exception has been consistently applied only in the context of mandamus proceedings." (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 874 (*Reynolds*); *People ex rel. Becerra, supra*, 29 Cal.App.5th at p. 503.) However, the Complaint does not contain a cause of action for a writ of mandate. The *only* places the word "mandate" or "mandamus" appear in the Complaint are (1) in the caption, and (2) in the prayer for relief on the first cause of action. Spotlight contends this suffices to make the case a mandamus action and, therefore, opens the door to public interest standing.

10

The trial court agreed with Spotlight. Relying solely on the request for a writ of mandate in the prayer of the Complaint, the trial court stated:

> "Turning to public interest standing, [D]efendants erroneously argued that the [Complaint] 'does not [plead] mandamus.' [Citation.] This, of course, is incorrect. Paragraph 6 of the prayer in the [Complaint] *does* seek a writ of mandate. So the initial central premise of [D]efendants' public interest standing argument collapses."

The trial court's reliance on the prayer of the Complaint to establish public interest standing is incorrect. "[T]he prayer is not part of the cause of action . . . ." (4 Witkin, Cal. Proc. (5th ed. 2020) § 495.) Either the Complaint adequately alleges facts entitling Spotlight to a writ of mandate or it does not. Seeking a writ in the prayer adds nothing to that determination.

Moreover, although the Complaint also bears the caption, "Petition for Writ of Mandate", that too is ineffectual to make this a mandamus action. "The caption, title, or label of a pleading . . . does not determine its nature or legal effect." (*Stiger v. Flippin* (2011) 201 Cal.App.4th 646, 654.)

Contrary to Spotlight's contentions, the Complaint lacks essential allegations for a writ of mandate. For example, the Complaint does not allege facts showing there is no other plain, speedy, and adequate remedy— essential elements for mandamus. (See *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593.) Nor could the Complaint allege such facts.

This case has always been all about money—civil fines and attorneys' fees. For example, in the trial court Spotlight assured the court that it is not seeking to overturn or vacate any Commission decision. At trial, Spotlight's attorney argued, *"A hefty financial penalty is the only thing that will suffice."* (Italics added.)

11

Twice in closing argument, Spotlight's attorney stated that he was not seeking a writ of mandate. The first time was in the context of a discussion about whether strict compliance with the disclosure statutes was necessary, or if substantial compliance would suffice. Defendants' counsel urged the standard was substantial compliance, citing *North Pacifica LLC v. California Coastal Com.* (2008) 166 Cal.App.4th 1416. In closing argument, Spotlight's attorney distinguished *North Pacifica* on the grounds that there, the plaintiff was seeking a writ of mandate, whereas "[h]ere, we're seeking penalties against individual commissioners." The second time was in Spotlight's closing trial court brief, where Spotlight conceded that a writ of mandate was never a feasible remedy in this case, stating:

> "Defendants first contend that the violations here are 'susceptible to restoration or correction.' [Citation.] *How could that ever be done*?

> "[¶] It could not be done meaningfully because all the projects on which Defendants held their illegal ex parte communications have come and gone. It could not be done meaningfully because Defendants Mitchell, McClure, and Kinsey are no longer on the Commission.

> "[¶] *And it could not be done at all* because none of the Defendants could recall any of his or her ex parte communications with a degree of precision or thoroughness that even begins to approach what the Coastal Act requires . . . . The full-and-timely-disclosure train left the station years ago." (Italics added.)

In the end, the trial court determined that Spotlight had essentially abandoned the Complaint's prayer for a writ, stating:

> "The requests for relief other than fines, initially stated in the amended pleadings, are not really further developed in the closing briefs. To the extent they are, plaintiff appears now to concede that non-monetary justice is not possible at this time. [Citation.]

12

"[¶] Therefore, in light of the fact that three of the defendants are no longer commissioners, and because only past wrongs are involved, all forms of injunctive, mandamus and declaratory relief are denied . . . ." (Italics added.)

To uphold the ruling conferring public interest standing, Spotlight claims the trial court "clearly found—as a matter of *fact*—that [the Complaint] was sufficient to seek a writ of mandate, which finding is clearly supported by substantial evidence."

This argument is untenable. Determining whether a complaint is legally sufficient to afford a particular remedy is a question of law reviewed de novo, not a factual determination reviewed for substantial evidence. (*Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 837 [sufficiency of a complaint is a question of law reviewed de novo].)

E. *The Trial Court Lacks Discretion to Confer Public Interest Standing In Civil Litigation Seeking Money*

Alternatively, the trial court also ruled that "public interest standing can be conferred by exercise of discretion." The court found "that circumstances for the exercise of this discretion exist, inasmuch as failing to allow standing as to counts one and two would result in the lack of an effective remedy for violation of an important public interest statute."

Putting aside the question of whether public interest standing is necessary to provide an effective remedy in this case, this ruling is erroneous as a matter of law. There is no general exception to the requirement of standing for cases that a court finds to be in the "public interest." (*People ex rel. Becerra*, *supra*, 29 Cal.App.5th at p. 497.) Rather, even in a mandamus case where a plaintiff would have public interest standing, the court has discretion to *deny* standing based on countervailing policies.

13

The California Supreme Court discussed this aspect of public interest standing in *Save the Plastic Bag*, stating, "No party . . . may proceed with a mandamus petition as a matter of right under the public interest exception." (*Save the Plastic Bag, supra*, 52 Cal.4th at p. 170, fn. 5.) To the contrary, "The policy underlying the [public interest] exception may be outweighed by competing considerations of a more urgent nature." (*Ibid.*)

For example, in *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, a member of the Psychology Examining Committee sought a writ of mandate to compel the agency to comply with a statute requiring a certain passing grade. (*Id.* at pp. 795-796.) Because the petitioner neither sought a psychology license nor was in danger of losing such license, she was not beneficially interested in seeking a writ of mandate. (*Id.* at p. 797.) Although the petitioner would otherwise have had public interest standing, the court found "policy issues" militated "against permitting disgruntled government agency members to seek extraordinary writs from the courts." (*Id.* at p. 799.) *Carsten* illustrates that "the policy underlying the [public interest] exception may be outweighed in a proper case by competing considerations of a more urgent nature—there, the dangers consequent upon allowing an administrative board member to sue her own agency." (*Green v. Obledo* (1981) 29 Cal.3d 126, 145.)

The appellate court in *Nowlin v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1529 applied these principles in a case where the trial court had issued a writ of mandate prohibiting the Department of Motor Vehicles from requiring license applicants to disclose Social Security numbers. The plaintiffs invoked public interest standing because they lacked a beneficial interest (the statutes requiring disclosure did not apply to them). (*Id.* at p. 1537.) The Court of Appeal rejected such standing because " 'competing

14

considerations of a more urgent nature' nullifies the public right/public duty exception." (*Id.* at p. 1538.)

Here, Defendants' trial brief correctly summarized this law, stating:

> "[E]ven if a plaintiff otherwise meets the requirements of the public right/public duty exception in a mandamus proceeding, he is not entitled to proceed 'as a matter of right.' [Citation.]
>
> "[¶] Rather, the [c]ourt may exercise discretion to confer such standing only if it finds that failing to do so would result in the lack of an effective remedy for violation of an important public interest statute."

The trial court, however, misread Defendants' brief and misunderstood the nature of the court's discretion. The court stated, "[D]efendants acknowledge that public interest standing can be conferred by exercise of discretion." But that is not what Defendants stated. The court took the exception (the court has discretion to *deny* public interest standing), turned it on its head, and determined it had discretion to *grant* public interest standing in *any* case deemed necessary to provide an "effective remedy for violation of an important public interest statute."

On appeal, seeking to uphold the ruling, Spotlight makes the same mistake as did the trial court. Spotlight asserts, "Appellants admit a court may confer public interest standing 'if it finds that failing to do so would result in the lack of an effective remedy for violation of an important public interest statute.' " However, Defendants admitted no such thing. And even if they had, that is not the law. (*Save the Plastic Bag*, *supra*, 52 Cal.4th at p. 170, fn. 5; *Desny v. Wilder* (1956) 46 Cal.2d 715, 729 [reviewing court not bound to accept concessions of parties as establishing the applicable law].)

"Lack of standing is a fatal . . . defect that requires judgment against the plaintiff." (*Scott v. Thompson* (2010) 184 Cal.App.4th 1506, 1510.)

15

Accordingly, to the extent the court entered judgment against Defendants on counts 1 and 2 of the first cause of action, the judgment must be reversed with directions to enter judgment in Defendants' favor.[5]

## II.  *SECTION 30820 DOES NOT APPLY TO EX PARTE COMMUNICATION DISCLOSURE VIOLATIONS*

### A.  *Introduction*

Count 3 of the Complaint alleges that each disclosure violation is separately punishable (up to $30,000 per violation) under section 30820(a)(2). Section 30805 provides, "Any person may maintain an action for the recovery of civil penalties provided for in [s]ection 30820."  Thus, unlike counts 1 and 2, Spotlight has statutory standing to bring count 3.

The viability of count 3 is significant, not only because Spotlight unquestionably has standing to pursue it, but also because almost all of the fines that the trial court imposed were on count 3.  Specifically, 20 of Mitchell's 22 violations, 12 of McClure's 14 violations, 13 of Vargas's 25 violations, 7 of Howell's 13 violations, and 43 of Kinsey's 59 violations were on count 3.  Defendants contend, however, that as a matter of law section 30820(a)(2) does not apply to violations of the Act's specific ex parte disclosure statutes.  As explained below, we agree.

### B.  *Section 30820, in General*

---

5    This disposition makes it unnecessary to consider Defendants' alternative argument that the court abused its discretion in determining that public interest standing on counts 1 and 2 was necessary to afford an effective remedy.  Were we to consider the point, we note that any "aggrieved person" has statutory standing under section 30328 to seek mandamus.  Trial exhibit 6, a minute order from the Orange County Superior Court in *Friends of the Canyon v. California Coastal Commission* (Super. Ct. Orange County, 2015, No. 30-2015-00776088-CU-PT-CJC) is a case where an aggrieved person sought and obtained that remedy.

16

The Act governs land use planning in the coastal zone to protect natural and scenic resources. (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793.) To enforce its provisions, section 30820, subdivision (a) provides that "[a]ny person who violates any provision of this division [the Act] may be civilly liable" as provided in this statute.

Under subdivision (a)(1) of section 30820, any person who undertakes *development* in violation of the Act or inconsistently with any previously issued coastal development permit may be fined between $500 and $30,000:

> "(a) Any person who violates any provision of this division may be civilly liable in accordance with this subdivision as follows:

> "(1) Civil liability may be imposed by the superior court in accordance with this article on any person who performs or undertakes development that is in violation of this division or that is inconsistent with any coastal development permit previously issued by the commission, a local government that is implementing a certified local coastal program, or a port governing body that is implementing a certified port master plan, in an amount that shall not exceed thirty thousand dollars ($30,000) and shall not be less than five hundred dollars ($500)."

Section 30820(a)(2) provides that up to $30,000 in fines may be imposed for any violation of the Act other than that specified in paragraph (a)(1):

> "(2) Civil liability may be imposed for any violation of this division other than that specified in paragraph (1) in an amount that shall not exceed thirty thousand dollars ($30,000)."

Subdivision (b) of section 30820 provides additional per-day penalties between $1,000 and $15,000 for intentionally and knowingly performing or

17

undertaking development in violation of the Act or inconsistent with any previously issued coastal development permit.[6]

C. *The Issue Presented, Parties' Contentions, and Trial Court's Ruling*

The issue is one of statutory interpretation: Where a Commissioner violates section 30324 (by not making a full and timely disclosure) and/or section 30327 (by participating in a matter without first making full disclosure), in addition to the $7,500 penalty that a court may impose for each such violation, may the court also impose up to a $30,000 fine under section 30820(a)(2)?

Spotlight's primary argument that section 30820(a)(2) applies to ex parte communication disclosure violations is straightforward and logical:

1. Section 30820(a)(2) provides that "civil liability may be imposed for any violation of this division other than that specified in paragraph 1 . . . ."

2. A Commissioner's violation of section 30324 and/or section 30327 is a "violation of this division other than that specified in paragraph 1."

---

[6]  Subdivision (b) of section 30820 provides: "Any person who performs or undertakes development that is in violation of this division or that is inconsistent with any coastal development permit previously issued by the commission, a local government that is implementing a certified local coastal program, or a port governing body that is implementing a certified port master plan, when the person intentionally and knowingly performs or undertakes the development in violation of this division or inconsistent with any previously issued coastal development permit, may, in addition to any other penalties, be civilly liable in accordance with this subdivision. Civil liability may be imposed by the superior court in accordance with this article for a violation as specified in this subdivision in an amount which shall not be less than one thousand dollars ($1,000), nor more than fifteen thousand dollars ($15,000), per day for each day in which the violation persists."

3.  Therefore, each such violation is punishable under section 30820(a)(2).

Furthermore, Spotlight asserts that the ex parte disclosure statutes begin by stating, "In addition to any other applicable penalty . . . ." (§§ 30327, subd. (b), 30824.)  Spotlight contends this shows that the Legislature intended all three penalty provisions apply to each violation.

However, Defendants contend that the phrase "any violation of this division other than that specified in paragraph 1" cannot be read in isolation. In sections 30324 and 30327, the Legislature addressed a unique type of Coastal Act violation—one that only a Commissioner can commit, and that involves the *decisionmaking process*.  Defendants contend that to interpret "any violation" in section 30820(a)(2) literally ignores legislative intent to create two "separate fine regimes:  one for development-related violations, and the other for ex parte [communication disclosure] violations."

In the trial court, Defendants asked the court to take judicial notice of excerpts from section 30820's legislative history that supports their contentions.  Defendants assert that properly construed, section 30820(a)(2) concerns "other development-related violations that do not fall within subdivision (a)(1)."  These violations would include "the failure to comply with the conditions of a coastal development permit, such as the requirement to record an easement, to establish a shuttle program or to pay an in lieu fee to mitigate transportation impacts."

The trial court agreed with Spotlight, finding that the phrase "any violation" in section 30820(a)(2) was unambiguous, encompassed ex parte disclosure violations, and because the statutory language was clear, it was unnecessary to consider legislative history.

19

D. *Statutory Interpretation and the Standard of Review*

"The proper interpretation of a statute is a question of law, which we determine independently, or de novo.  [Citation.]  The fundamental purpose of statutory interpretation is to ascertain the intent of the Legislature in enacting the statute.  [Citation.]  We begin by considering the actual language of the statute, giving its words their usual and ordinary meaning.  [Citation.]  We construe the words of a statute as a whole and within the overall statutory scheme to effectuate the intent of the Legislature.  [Citation.]  If the words of the statute are unambiguous, the plain meaning of the statute governs and there is no need for construction.  [Citation.]  However, if the statutory language is ambiguous, we look to other indicia of the intent of the Legislature.  [Citation.]  Those other indicia may include the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute."  (*People v. Jacobo* (2019) 37 Cal.App.5th 32, 42.)

E. *Section 30820(a)(2) is Ambiguous with Respect to Whether it Applies to Violation of Ex Parte Communication Disclosure Statutes*

A statute is ambiguous when it is susceptible to more than one reasonable interpretation.  (*People v. Smith* (2002) 95 Cal.App.4th 283, 298.)  Spotlight is correct that when read in isolation, section 30820(a)(2) is not ambiguous.  Subdivision (a) of the statute provides that "[a]ny person who violates any provision of this division may be civilly liable in accordance with this subdivision . . . ."  " 'Any' is a term of broad inclusion, meaning 'without limit and no matter what kind.' "  (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 635.)  Thus, by its plain terms, section 30820, subdivision (a) applies to a violation of section 30324 and/or 30327 because each is a "provision of this division."

20

Moreover, subdivision (a)(1) of section 30820 addresses civil liability for "any person who performs or undertakes development that is in violation of this division . . . ." Subdivision (a)(2) of this statute provides that "[c]ivil liability may be imposed for *any violation of this division other than that specified in paragraph (1)* in an amount" not to exceed $30,000. (Italics added.) These words, when read alone, unambiguously mean that a Commissioner's violation of section 30324 and/or 30327 is also punishable under section 30820(a)(2).

However, as this court stated in *Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595, " 'language that appears clear and unambiguous on its face may be shown to have a latent ambiguity when some extrinsic factor creates a need for interpretation or a choice between two or more possible meanings.' " (*Id.* at p. 620) For example, in *Klem,* an insurance company determined that a vehicle was a total loss; however, the owner, who used the vehicle to transport his severely ill wife to medical appointments, had the car repaired. (*Id.* at p. 604.) Vehicle Code section 544, subdivision (a) defines "total loss" as resulting when one of the identified persons " 'considers it uneconomical to repair the vehicle and *because of this, the vehicle is not repaired by or for the person who owned the vehicle* at the time of the [accident].' " (*Klem*, at p. 620, italics added.) Because the owner in *Klem* repaired the car, he claimed the insurer should not have declared it a total loss. Under the plain meaning of the Vehicle Code, the owner was correct: the car was not a total loss because it was "repaired by or for the person who owned" it at the time of the accident. Nevertheless, we held that the statute was ambiguous because it "contemplate[d] a person will consider a vehicle uneconomical to repair, and 'because of this,' not repair it. It does not

21

envision someone nevertheless will elect to repair the vehicle, and its application in that scenario is ambiguous." (*Klem*, at p. 620.)

In *Varshock v. California Department of Forestry and Fire Protection* (2011) 194 Cal.App.4th 635, this court applied a similar approach to a statutory interpretation issue. In that case, property owners sought refuge inside a fire truck as fire raged towards their property. (*Id.* at p. 639.) Firefighters exited the truck to fight the fire, but returned as the fire engulfed the property. With the firefighters and the property owners inside the truck, the wind changed and the fire enveloped part of the truck. One of the property owners died; the other survived but sustained serious injuries. This court considered the interaction between government immunity "for any injury caused in fighting fires" in Government Code section 850.4 and an exception to that immunity in Vehicle Code section 17001 for injuries caused by negligent operation of any motor vehicle by an employee of the public entity acting within the scope of employment. (*Varshock*, at pp. 643-644.) We noted that by its plain terms, "if the Vehicle Code exception applies, then there is no government immunity even if the injury was 'caused in fighting fires.'" (*Varshock*, at p. 644, italics omitted.) Although stating, "[o]rdinarily, that would be the end of the matter," we determined there was a "latent ambiguity" because "a literal interpretation of the statute would frustrate rather than promote the purpose of the statute or would produce absurd consequences the Legislature did not intend." (*Ibid.*) We looked to the relevant legislative history to "resolve the question of [the statutes'] intended meaning . . . ." (*Id.* at p. 647.)

Here, the trial court interpreted section 30820(a)(2) by looking at the phrase "any violation" in section 30820 itself, stating:

> "What is before this court is a simple question: does 'any
> violation of this division' include violation of the ex parte

rules. The court answers this question in the affirmative based on a plain reading of the unambiguous word 'any.' " (Italics omitted.)

The court erred because although statutory interpretation begins with the words in section 30820, it cannot end there. "[W]e do not consider the statutory language 'in isolation.' " (*People v. Mendoza* (2000) 23 Cal.4th 896, 907.) Rather, we must consider the statute's language " 'in the context of the statutory framework as a whole.' " (*Id.* at pp. 907-908.)

With respect to disclosure of ex parte communications, the statutory framework includes sections 30324, 30327, and 30824. These statutes *specifically* address nondisclosure of ex parte communications. If section 30820(a)(2) addresses ex parte nondisclosure violations, it does so only generally, as a subclass of all violations of the Act other than those punishable under subdivision (a)(1) of section 30820.

Particular provisions of law ordinarily prevail over more general provisions. " ' "It is well settled . . . that a general provision is controlled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates." ' " (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 738.)

Thus, although when read in isolation, the phrase "any violation" in section 30820(a)(2) is unambiguous, the existence of sections 30324, 30327, and 30824 at the very least reasonably indicates that the Legislature intended to exclusively deal with that topic in those statutes, and not in the more general section 30820(a)(2). At this point in the analysis, whether that is ultimately the correct conclusion is unimportant. To consider extrinsic

23

evidence of legislative intent, the alternative interpretation does not have to be correct, but need only be reasonable. Accordingly, we next consider section 30820's legislative history.[7]

F. *As Originally Enacted in 1976*

As originally enacted in 1976, section 30820 provided, "Any person who violates any provision of this division shall be subject to a civil fine of not to exceed ten thousand dollars ($10,000)." (Stats. 1976, ch. 1330, p. 6003.) In 1976, however, the Act did not contain any provision regarding disclosure of ex parte communications.

G. *1976 to 1993—No Prohibitions on Ex Parte Communications*

Until 1993, no statute required a Commissioner to publicly disclose an ex parte communication, and there was no penalty for failing to do so. A Department of Finance bill analysis in July 1992 explains:

> "At this time, a commissioner cannot be compelled to report an ex parte contact. . . . Currently, there is no penalty for failure to disclose, since no requirement exists." (Dept. of Finance Bill Analysis, A.B. No. 3459 (1991-1992 Reg. Sess.) as amended July 1, 1992, p. 1.)

In sum, from the Coastal Act's inception in 1976 through 1992, a Commissioner could engage in ex parte communications, there was no reporting obligation, and section 30820 did not penalize nondisclosure of ex parte communications.

---

[7] We notified the parties that the court was considering taking judicial notice of the legislative documents referred to in this part of the opinion, and we provided the parties an opportunity to file letter briefs addressing the propriety of taking judicial notice and the tenor of the matter to be noticed. (Evid. Code, §§ 455, subd. (a); 459, subd. (c).) The parties agree that these documents are properly subject to judicial notice. Accordingly, the court takes judicial notice of the documents cited in the text above.

H. *The 1992 Amendment to Section 30820*

In 1992, Senate Bill No. 1449 (Senate Bill 1449) repealed the existing section 30820 and replaced it with a new version. The new section 30820 increased the maximum penalty from $10,000 to $30,000 and imposed a minimum fine of $500. Senate Bill 1449 also changed some language in section 30820. No longer did section 30820 provide a penalty for violating "any provision of this division." Rather, the 1992 version penalized "performing or undertaking development" in violation of the Act or inconsistent with any coastal development permit. As so amended, section 30820, subdivision (a) provided:

> "Any person who performs or undertakes development in violation of this division, or inconsistent with any coastal development permit . . . may be civilly liable . . . in an amount which shall not exceed thirty thousand dollars ($30,000) and shall not be less than five hundred dollars ($500)." (Stats. 1992, ch. 955, p. 4532.)

Thus, after repeal and reenactment, section 30820 *still* did not apply to a Commissioner's nondisclosure of an ex parte communications.

I. *The 1992 Amendments Adding Ex Parte Disclosure Rules*

Also in 1992, Assembly Bill No. 3459 (Assembly Bill 3459) added a new article to the Act—Article 2.5, entitled "Fairness and Due Process." This is when and where the Legislature enacted statutes requiring disclosure of ex parte communications.

A report prepared for Assembly Bill 3459 by the Senate Committee on Natural Resources stated that in the 1980's, the Attorney General's office had instructed Commissioners to cease ex parte communications because undisclosed ex partes could result in a court invalidating an affected decision. The report states, "In spite of this advice, there is clear evidence that some

25

commissioners have engaged in ex parte communications." (Sen. Com. on Natural Resources and Wildlife, Assem. Bill 3459, June 23, 1992, p. 1.)

Assembly Bill 3459 added section 30324, which requires a commissioner to "fully disclose and make public the ex parte communication" within the specified deadlines. (Stats. 1992, ch. 1114, p. 5139.) The same bill also added section 30824, providing that "In addition to any other applicable penalties, any commission member who knowingly violates section 30324 is subject to a civil fine," not to exceed $7,500. (Stats. 1992, ch. 1114, p. 5140.)

Before continuing with the chronology, it is important to note that as enacted, the phrase, "In addition to any other applicable penalties" in section 30824 cannot possibly refer to a civil penalty under section 30820. This is because even as amended in 1992, section 30820 only penalized violations of the Act in "perform[ing] or undertak[ing] development . . . ."

Returning to the chronology, Assembly Bill 3459 also added section 30327, which prohibits a commissioner from attempting to influence a decision about which he or she had an unreported ex parte communication. (Stats. 1992, ch. 1114, p. 5139.) The penalty for violating this provision was added as section 30328, which provides that if a violation "of this article" occurs and a commission decision "may have been affected by the violation," an aggrieved person may seek a writ of mandate requiring the commission to revoke its action and to rehear the matter. (*Ibid.*)

Thus, with Assembly Bill 3459, the Legislature differentiated among the following violations of the Act:

(1) committed by persons developing without a permit, or in violation of one issued—penalized under section 30820, subdivision (a) by a fine not less than $500 nor more than $30,000;

26

(2) committed by Commissioners, in failing to timely disclose ex parte communications (§ 30324)—penalized under section 30824 by a fine not to exceed $7,500 plus attorneys' fees;

(3) committed by Commissioners, in participating in a decision about which he or she had an undisclosed ex parte communication (§ 30327)—penalized not by any fine; rather, an aggrieved person could seek a writ of mandate to overturn the affected decision and obtain a rehearing. (§ 30328.)

J. *The 1993 Amendment Adding a Separate $7,500 Fine*

In 1993, the Legislature again amended the Act, this time to provide a $7,500 penalty for a Commissioner's participating in a decision about which he or she had an undisclosed ex parte communication. In a new subdivision (b) to section 30327, the Legislature provided:

> "(b) In addition to any other applicable penalty, including a civil fine imposed pursuant to section 30824 [failure to fully disclose ex parte within seven days], a commission member who knowingly violates this section shall be subject to a civil fine not to exceed . . . $7,500. Notwithstanding any law to the contrary, the court may award attorneys' fees and costs to the prevailing party." (Stats. 1993, ch. 798, p. 4360.)

A Senate floor bill analysis explains, "This bill . . . [s]ubjects a commissioner who does not properly report an ex parte communication and participates in a commission decision to a fine of not more than $7,500." (Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 909, as amended September 3, 1993, p. 2, ¶¶ 4-5.)

K. *The 1993 Amendment to Section 30820, adding Subdivision (a)(2)*

The same year (1993), the Legislature again amended the Act. Senate Bill No. 608 (Senate Bill 608) added the language in section 30820(a)(2) that is at issue here. As so amended, section 30820(a)(1) and (2) provide:

27

"(1) Civil liability may be imposed by the superior court in accordance with this article on any person who performs or undertakes development that is in violation of this division or that is inconsistent with any coastal development permit previously issued by the commission, a local government that is implementing a certified local coastal program, or a port governing body that is implementing a certified port master plan, in an amount that shall not exceed thirty thousand dollars ($30,000) and shall not be less than five hundred dollars ($500).

"(2) Civil liability may be imposed for any violation of this division other than that specified in paragraph (1) in an amount that shall not exceed thirty thousand dollars ($30,000)." (Stats. 1993, ch. 1199, p. 6896.)

In addition to adding subdivision (a)(2), the Legislature also enacted a three-year statute of limitations (triggered by discovery) for bringing an action to recover civil fines or penalties under section 30820. (§ 30805.5.)

The Coastal Commission sponsored this bill because "illegal development in the coastal zone is a chronic problem." (Senate Natural Resources and Wildlife, Bill Analysis of Sen. Bill 608, April 13, 1993, p. 3.) The bill was introduced "to strengthen the Coastal Commission's enforcement program" because "[m]any violations have resulted in irreparable damage to coastal resources, yet because of an inadequate enforcement system, little has been done to deter future violations." (Assembly Committee on Natural Resources, Bill Analysis, June 28, 1993, p. 2.)

L. *Analysis*

As originally enacted in 1976, section 30820 did not penalize a Commissioner's failure to disclose an ex parte communication. It was not until 1992 that the Legislature enacted statutes requiring such disclosure and penalizing nondisclosure. Even in 1992, section 30820 did not apply to penalize a Commissioner's violation of the ex parte disclosure statutes. As

28

amended in 1992, section 30820 applied only to one who "performs or undertakes development in violation of this division, or inconsistent with any coastal development permit . . . ." (Stats. 1992, ch. 955, p. 4532.) Violation of ex parte disclosure statutes was punished separately, with fines up to $7,500 per violation, plus an aggrieved person could seek a writ of mandate to overturn an affected decision. (§§ 30327, 30824, 30328.)

Given this history, the issue here becomes whether the 1993 amendment to section 30820 in Senate Bill 608—which added subdivision (a)(2)—was intended to change the law by subjecting Commissioners to an additional $30,000 penalty for each ex parte disclosure violation.

The available legislative history indicates that the Legislature did not intend section 30820(a)(2) to apply to a Commissioner's violation of ex parte disclosure statutes. First and foremost, the Coastal Commission itself sponsored Senate Bill 608. The stated purpose was to strengthen the Commission's coastal enforcement program, to protect and preserve coastal resources. We find nothing in the legislative history to support a rather remarkable contention that the Commission intended to impose an *additional* up to $30,000 per disclosure violation upon its own Commissioners to accomplish this purpose. Indeed, if the Legislature intended to increase a Commissioner's potential liability for each undisclosed ex parte communication from a maximum of $15,000 (under a one-year statute of limitations)[8] to $45,000 (under a *three-year* statute of limitations, triggered by discovery), one would reasonably expect *something* in the legislative history to at least allude to such an intent, especially in a bill sponsored by the Commission itself. After all, the consequences of imposing that extent of

---

8    Code of Civil Procedure section 340, subdivisions (a) and (b) provide a one-year limitations period for a statutory penalty.

29

liability on Coastal Commissioners—*who serve as unpaid volunteers*—could be staggering. In this case, for example, by aggregating the potential maximum penalties to include $30,000 under section 30820(a)(2), Spotlight alleged that each Defendant was *personally liable for millions* of dollars in civil fines, to say nothing of a potential million dollar attorneys' fee award.

As further evidence that the Legislature did not intend the phrase "any violation of this division other than that specified in paragraph (1)" in section 30820(a)(2) to include ex parte disclosure violations, the Attorney General points out that some violations of the Coastal Act are "not compatible with enforcement through judicial imposition of fines." For example, section 30335.1 requires Commission staff to assist applicants and other interested persons:

> "The commission shall provide for appropriate employees on the staff of the commission to assist applicants and other interested parties in connection with matters which are before the commission for action. The assistance rendered by those employees shall be limited to matters of procedure and shall not extend to advice on substantive issues arising out of the provisions of this division . . . ."

The Attorney General persuasively asserts, "The Legislature could not have intended a fine of up to $30,000 if a staff member . . . fails to assist a member of the public . . . ." Spotlight acknowledges this argument, but fails to refute it, instead relying on the general rule that interprets a statute according to plain meaning. We recognize, of course, that courts generally strive to effectuate the plain meaning of statutes. However, " '[o]ur primary goal is to implement the legislative purpose, and, to do so, we may refuse to enforce a literal interpretation of the enactment if that interpretation produces an absurd result at odds with the legislative goal.' " (*Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 253.)

In a related argument, the Attorney General asserts that parties frequently challenge Commission decisions in court, and courts "sometimes hold that the Commission did not comply with [the Act] in reaching [its] decision."  For example, in *City of Malibu v. California Coastal Com.* (2012) 206 Cal.App.4th 549, the court found that the Commission acted "in excess of its jurisdiction" under the Act when it approved certain amendments to a city's certified local coastal program.  (*Id.* at p. 552.)  In *Security National Guaranty, Inc. v. California Coastal Com.* (2008) 159 Cal.App.4th 402, the court held that under the Act, the Commission lacked power to declare property an environmentally sensitive habitat area during an administrative appeal from a local government's grant of a coastal development permit.  (*Id.* at p. 407.)

Interpreting "any violation of this division other than that specified in paragraph (1)" in isolation and according to its plain meaning, section 30802(a)(2) would seemingly authorize imposing up to $30,000 in penalties against Commissioners ("any person") who rendered these decisions.  Apart from the dictionary definition of the word "any," we discern nothing in the text, context, or legislative history of section 30820(a)(2) to support such a startling and unusual result.

Although the word "any" in the phrase "any violation of this division other than that specified in paragraph (1)" is on its face clear, courts have declined to read "any" literally when doing so would conflict with the Legislature's intent.  For example, in *Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, the plaintiff contended that the statutory phrase "any credit card transaction" included not only a purchase, but also a return and refund on the credit card purchase transaction.  (*Id.* at pp. 340-341.)  The appellate court stated that "[t]he meaning of a statute may not be determined from a

31

single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Id*. at p. 340.) The court held that the statutory term was ambiguous when applied to return transactions. (*Id*. at p. 341.) "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute." (*Id*. at p. 340.)

Similarly, in *Gordon H. Ball, Inc. v. State of California ex rel. Dept. Public Works* (1972) 26 Cal.App.3d 162, the court rejected a trial court's literal interpretation of the word "any" in a statute involving withholding payment under a construction contract, determining, "The word 'any' is at best ambiguous in this context." (*Id*. at p. 170.) So too is the word "any" in section 30820(a)(2) ambiguous with respect to ex parte disclosure violations punishable elsewhere in the Act.

Apart from the plain-language argument, perhaps Spotlight's best argument is that section 30824 (imposing up to $7,500 fine for nondisclosure) and section 30327, subdivision (b) (imposing up to $7,500 for nondisclosure plus participation) each begin by stating, "In addition to any other applicable penalty . . . ." Spotlight contends this language shows the Legislature intended all penalty provisions, including the one in section 30820(a)(2), to be stacked together. The trial court also made the same point, stating that such language "would be rendered a nullity if [D]efendants' construction is correct."

We disagree. The more reasonable interpretation is that the phrase "in addition to any other penalty" exists to cross-reference the two types of disclosure violations. For example, a Commissioner who violates the disclosure rules *and* also participates in the Commission's decision on the measure involved is subject to a fine under section 30327, subdivision (b),

32

plus an additional penalty for the nondisclosure itself under section 30824, for a total exposure of up to $15,000. The "in addition to any other applicable penalty" allows a court to apply both $7,500 penalties in such circumstances. The language does not necessarily mean that the court may also impose up to an additional $30,000 under section 30820(a)(2), and interpreting the "in addition to any other applicable penalty" language in this manner does not render it a "nullity."

Furthermore, the Legislative history supports this interpretation. As noted *ante*, the phrase "in addition to any other applicable penalty" in section 30824 was added by Assembly Bill 3459 in 1992. But it was not until 1993 that the Legislature amended section 30820 to add the $30,000 penalty in subdivision (a)(2) of that section. Thus, when enacted in 1992, the phrase "in addition to any other applicable penalty" in section 30824 could not have referred to section 30820(a)(2). Section 30820(a)(2) did not even exist until a year later.

Spotlight also asserts that if the Legislature intended section 30820 to apply only to "development-related" violations, then subdivision (a)(2), which pertains to any other violation of the Act, would have been "wholly unnecessary." We agree. Section 30820(a)(2) must apply to something, and that something must be violations of the Coastal Act "other than that specified in paragraph (1)" of section 30820.

It is unnecessary for us in this case to decide what violations of the Coastal Act, apart from development violations punishable under section 30820, subdivision (a)(1), are instead punishable under section 30820(a)(2), and we express no opinion here on that issue. Rather, to decide this case, it is only necessary to hold that section 30820(a)(2) does not apply to ex parte

communication disclosure violations punishable under sections 30324, 30327, and 30824.

Accordingly, to the extent the judgment is based on violations of these statutes under count 3 of the Complaint's first cause of action, the judgment must be reversed.[9] Moreover, because the judgment is reversed, the prevailing party attorneys' fee and cost award also falls. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1053 ["reversal of the judgment necessarily compels the reversal of the award of fees as costs to the prevailing party based on the judgment"].)

---

[9] This disposition makes it unnecessary to consider Defendants' remaining contentions that the trial court (1) should have deferred to the Commission's interpretation of section 30820, (2) erroneously imposed fines where Defendants substantially complied with disclosure requirements; (3) awarded fines based on an erroneous burden of proof; and (4) erred by not making a prevailing party determination for each count as to each Commissioner.

## DISPOSITION

The judgment is reversed with directions to enter judgment for Defendants and to conduct further proceedings consistent with this opinion, including but not necessarily limited to a motion by Defendants for prevailing party attorneys' fees and costs under section 30327, subdivision (b) and section 30824.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

35